IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARCIA LEE JOHNSON,

      Plaintiff,     No. 3:15-cv-01893-HZ

   v.         OPINION & ORDER

CAROLYN COLVIN,
Acting Commissioner of Social Security,

      Defendant.

Merrill Schneider
Schneider Kerr Law Offices
P.O Box 14490
Portland, Oregon 97293

   Attorney for Plaintiff,

Billy Williams
United States Attorney
Janice Hebert
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204

Sarah Moum
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Marcia Johnson ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Administrative Law Judge ("ALJ") failed to properly consider the medical evidence of Plaintiff's exertional limitations and improperly rejected Plaintiff's subjective testimony, the Commissioner's decision is reversed and this case is remanded for further administrative proceedings.

## BACKGROUND

     Plaintiff was sixty years old at her alleged disability onset date February 1, 2011. Tr. 27, 60.[1] Plaintiff has a master's degree in social work and past work experience as a medical social worker. Tr. 43. Plaintiff filed her DIB application on March 5, 2012, alleging disability due to major depressive disorder and anxiety. Tr. 156.

     The Commissioner initially denied Plaintiff's application on July 10, 2010, and again after reconsideration on December 3, 2012. Tr. 59–67. Plaintiff requested a hearing before an ALJ. Tr. 88–89. An administrative hearing was held on February 11, 2014, before ALJ Steve Lynch. Tr. 39–58. On February 28, 2014, ALJ Lynch issued a written decision denying Plaintiff's application. Tr. 24–34. Plaintiff sought review by the Appeals Counsel, but was

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as ECF No. 10.

denied, making ALJ Lynch's opinion the Commissioner's final decision that Plaintiff now challenges in this Court. Tr. 1–3.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. <u>Yuckert</u>, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the Act's insured status requirement and had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 29. At step two, the ALJ found that Plaintiff had the following severe impairments: depression and anxiety. <u>Id.</u> The ALJ also found that Plaintiff's renal failure, asthma, and sleep apnea did not constitute severe impairments. <u>Id.</u> At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or equal the severity of the listed impairments. Tr. 30. Next, the ALJ found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: (1) the claimant should avoid work at unprotected heights; (2) the claimant is limited to simple, entry level work; (3) the claimant is limited to occasional and casual interactions with the public; and (4) the claimant is unable to perform work that involves transactional dealings.

Tr. 31. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 33. At step five, the ALJ found, upon considering Plaintiff's age, education, work experience, and RFC, that there were jobs in the national economy that she could perform, such as hand packager and laundry worker. Tr. 33–34.

//

//

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation marks omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

I.    **Plaintiff's Standing and Walking Limitations Posed by Recurrent Bilateral Foot Bunions.**

Plaintiff alleges that she has standing and walking exertional limitations due to her bunions. Pl. Br., 5–7, ECF No. 11. The ALJ did not consider whether Plaintiff's bunions were a severe impairment at step two; consequently, Plaintiff's RCF had no physical exertional limitations. Tr. 29–33. At step two, the severity inquiry is a "*de minimis*" screening device to dispose of groundless claims. Yuckert, 482 U.S. at 153–54. The impairment must meet the statutory durational requirement and "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do

basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include physical functions

such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20

C.F.R. § 404.1521(b)(1). A plaintiff may satisfy step two's severity requirement through

"medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R.

§ 404.1508. A plaintiff's own statements of symptoms alone are insufficient. Id.

  The ALJ has an independent duty to fully develop the record and conduct an appropriate

inquiry to explore all relevant facts. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). "An

ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or

when the record is inadequate to allow for proper evaluation of the evidence." Mayes v.

Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001).

  Plaintiff emphasizes that she had three bunionechtomies between 2009 and 2011. Tr. 335,

341, 362, 371. In the medical record, Plaintiff's diagnosis of "Equinus Deformity of the Foot" is

listed many times as an active problem. Tr. 200–03, 206–08, 210–12, 215–16, 218–22, 224, 232,

234–40, 242, 246, 283. In a June, 2012 report, Dr. Wilson noted that the condition began on

September, 26, 2008, and continued to the present. Tr. 278. Defendant argues that Plaintiff's

alleged foot problems do not satisfy the Act's twelve month durational requirement because her

scheduled surgery date and subsequent recovery occurred over a two to three month period. Def.

Br. 7–9, ECF No. 12. Defendant further argues that the record is devoid of any evidence of

ongoing foot problems and Plaintiff's testimony of symptoms at the hearing is insufficient to

establish a severe impairment. Id. at 8–9.

  At the hearing, the ALJ questioned Plaintiff about her bunions. Tr. 49–50. The ALJ asked

Plaintiff whether she had recovered from her surgeries, whether she could go on difficult or easy

hikes, and whether she could work at a job where she had to be on her feet most of the day. Id.

Plaintiff testified that her bunions were recurrent, that she could not do a job which required her to be on her feet most of the day, and that sometimes her feet hurt and her toes went numb. Id. Later in the hearing, the ALJ posed four hypotheticals to the Vocational Expert ("VE") to determine what kinds of jobs might be available to Plaintiff in light of her impairments. Tr. 54–57. None of the ALJ's hypotheticals included exertional limitations. Id. The VE testified that since the ALJ was "not giving any exertional limitations" Plaintiff was capable of performing the medium unskilled positions of hand packager and laundry worker. Tr. 56. The ALJ's decision did not discuss Plaintiff's foot condition and concluded that Plaintiff could perform the positions above without exertional limitations. Tr. 33–34.

The Court rejects Defendant's position that as a matter of law Plaintiff's foot condition fails to meet step two's durational requirement. To satisfy the requirement Plaintiff's foot condition "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. Plaintiff's foot condition had been diagnosed as an active problem for a several year period. Plaintiff's three surgeries in three years, recovery periods, and testimony regarding foot pain and numbness, when taken together, support the conclusion that the condition lasted for at least a twelve month period. As she testified, Plaintiff's foot condition could have significantly impacted her physical ability to do basic work activities such as standing and walking. Tr. 49–50. The ALJ erred at step two by failing to discuss whether Plaintiff's foot condition constituted a severe impairment.

The next determination the Court must make is whether this error was harmless. An ALJ's decision "will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). For the ALJ's error to be harmless it must have been "inconsequential to the ultimate nondisability determination." Tomasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir.

2008) (internal quotation marks omitted). "Any error in neglecting to mention Plaintiff's [impairment] was harmless, so long as all of his impairments were considered in the RFC." Johnson v. Colvin, No. 3:13-CV-01139-HZ, 2014 WL 3851140, at *7 (D. Or. Aug. 1, 2014).

In this case, the ALJ's error was not harmless because the ALJ did not include any exertional limitations when formulating Plaintiff's RFC. The VE testified that absent any exertional limitations, Plaintiff could perform "medium, unskilled work." Tr. 56. The VE's testimony formed the basis for the ALJ's conclusion that Plaintiff was capable of performing "a full range of work at all exertional levels" with nonexertional limitations. Tr. 31, 34. The ALJ adopted the VE's recommendation and concluded that Plaintiff could perform the job duties of a package handler and laundry worker. Tr. 33–34. If Plaintiff's RFC included the standing and walking exertional limitations that she claims, then she may not have been assessed as capable of performing the duties of a package handler and a laundry worker and she may have been deemed disabled. Because Plaintiff's foot condition could have altered the ALJ's ultimate disability determination, the case must be remanded for the ALJ to determine whether Plaintiff's foot condition constitutes a severe impairment.

## II.    Plaintiff's Subjective Testimony

Plaintiff also alleges that the ALJ erred by rejecting Plaintiff's subjective testimony for less than clear and convincing reasons. Pl. Br. 7–10. The ALJ found that "[a]lthough the record shows claimant has depression and anxiety, the objective evidence does not establish that her impairments preclude her from engaging in all basic work activity as she has alleged." Tr. 31.

For the ALJ to reject Plaintiff's complaints, he must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996) (internal quotation marks omitted). Courts follow a two-step analysis for determining whether

the ALJ provided clear and convincing reasons for rejecting a plaintiff's subjective testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1036 (internal quotation marks omitted). "[T]he ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748, 749–50 (9th Cir. 1995) (internal quotation marks omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Lingenfelter, 504 F.3d at 1036 (internal quotation marks omitted).

To establish clear and convincing reasons, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks omitted). Factors that the ALJ may consider when making credibility determinations include the plaintiff's reputation for truthfulness, work record, testimony of physicians and third parties concerning the scope and severities of the conditions, "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." Orteza, 50 F.3d at 750; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997). If the ALJ's credibility determination is supported by clear and convincing reasons, the court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ provided less than clear and convincing reasons for rejecting Plaintiff's testimony by failing to identify Plaintiff's specific testimony that was not credible. See Berry, 622 F.3d at 1234. The ALJ rejected Plaintiff's ultimate allegation that her impairments precluded her from working on the grounds that it was not established by objective medical evidence. Tr. 31–32. Beyond that summary rejection, the ALJ did not discredit any of Plaintiff's specific testimony regarding her impairments. An ALJ may not discredit a Plaintiff's subjective testimony on the basis that it was not supported by objective medical evidence. Light, 119 F.3d at 792. "[T]he ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony." Id.

While the ALJ does rely on acceptable evidence that may form clear and convincing reasons, such as Plaintiff's positive response to treatment and the effectiveness of her medication, he nonetheless erred by failing to identify Plaintiff's testimony that the evidence discredited. Plaintiff alleges that her depression was so severe that she could not sleep or eat. Tr. 167. Plaintiff also reported that due to stress, she lost over forty pounds in weight over a twelve month period ending in July, 2012. Tr. 302. She repeatedly stated that she suffered from poor concentration, an inability to tolerate interpersonal stress, and that she was often prone to daily crying spells. Tr. 204, 206–07, 210, 217, 219, 221, 378–79. Because the ALJ failed to specifically discredit Plaintiff's testimony, "the case must be remanded to the ALJ to make adequate findings." Light, 119 F.3d at 793.

//

//

//

### III.    Medical Source Opinions

#### A.    *Treating Physician Dr. Wilson*

Plaintiff argues that the ALJ improperly ignored Dr. Wilson's opinion regarding her limitations and failed to incorporate those limitations into her RFC. An ALJ may reject a treating doctor's uncontroverted opinion only for "clear and convincing" reasons supported by substantial evidence. Ryan v. Comm'r of Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008). An ALJ will give "controlling weight" to a treating source's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). The ALJ errs when he "rejects a medical opinion or assigns little weight while doing nothing more than ignoring it." Garrison v. Colvin, 759 F.3d 995, 1012–13 (9th Cir. 2014).

Dr. Wilson diagnosed Plaintiff with "major depression, recurrent." Tr. 377. Dr. Wilson treated Plaintiff for this condition on a weekly to monthly bases beginning on September 8, 2009, and continued treatment through the date that the ALJ's opinion was filed. Id. He listed Plaintiff's symptoms as: "Depressed mood, inability to concentrate, tearfulness, inability to tolerate interpersonal stress, fatigue." Id. Dr. Wilson recommended that Plaintiff stop working as a clinical social worker because the stress of the job worsened her depression. Id.

Throughout Dr. Wilson's progress notes, he indicates that Plaintiff's depression symptoms worsened in reaction to her son's incarceration and the deaths of her sisters. Tr. 204, 206–07, 210–12, 216–18, 220–23, 232–39. As time progressed, Dr. Wilson opined that Plaintiff was coping with situational stressors, "taking productive steps" at home and in her social life, "getting along better overall", and reacting well to medication. Tr. 202, 204, 206–07, 244. In one of Dr. Wilson's more recent reports, he noted that Plaintiff was "overall improving in terms of

depressive disorder" and was stable with medication Tr. 204. In a follow up visit with Dr.

Wilson in June 2012, his impression of Plaintiff was that she "seems to be getting along better

over all, and depression is controlled with medication, however, her son's long prison term

remains highly stressful for her." Tr. 284.

The ALJ gave Dr. Wilson's opinion "significant weight" because it was "supported by

treatment notes on the record." Tr. 32. Based on Dr. Wilson's opinion, the ALJ found that

Plaintiff could no longer work as a social worker. Id. The ALJ also found, however, that Dr.

Wilson's opinion "does not rule out simple work with little interpersonal stress." Id. "This

opinion is generally consistent with the conclusion that the claimant is able to perform simple,

entry-level work, with only occasional and casual interaction with the public" as indicated in the

RFC. Id. Once more, the ALJ determine that Plaintiff's RFC had the following nonexertional

limitations: Plaintiff should avoid work at unprotected heights; she is limited to simple, entry

level work; she is limited to occasional and casual interactions with the public; and she is unable

to perform work that involves transactional dealings. Tr. 31.

Plaintiff argues that the ALJ improperly rejected Dr. Wilson's opinion by ignoring his

statements about Plaintiff's inabilities to concentrate and tolerate interpersonal stress. Pl. Br. 11.

The ALJ, however, incorporated Dr. Wilson's opinion on these points into the RFC. First, the

RFC accounts for Plaintiff's inability to concentrate by limiting the work to simple, entry level

work. Tr. 31. Second, the RFC accounts for Plaintiff's inability to tolerate social interactions by

limiting Plaintiff to occasional and casual interactions with the public. "An ALJ may synthesize

and translate assessed limitations into an RFC assessment without necessarily repeating each

functional limitation verbatim in the RFC assessment." Martin v. Astrue, No. 2:12-CV-0033-

KJN, 2013 WL 552932, at *8 (E.D. Cal. Feb. 13, 2013) (quoting Stubbs–Danielson v. Astrue,

539 F.3d 1169, 1173–74 (9th Cir. 2008)). The RFC's limitations show that the ALJ did not ignore Dr. Wilson's opinion regarding Plaintiff's inabilities. Rather, the RFC is consistent with Dr. Wilson's opinion. The Court will uphold the ALJ's findings if "supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation" the Court must defer to the ALJ's decision. <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004) (citation omitted). Thus, the ALJ did not err in considering Dr. Wilson's opinion.

### B.    *Other Source Beth Knapp, MA, QMHP*

Next, Plaintiff argues that the ALJ further erred by rejecting Knapp's opinion as to the nature and severity of Plaintiff's impairments. Pl. Br. 12–14. Knapp, as a Qualified Medical Health Professional ("QMHP"), is an "other source" for purposes of evaluating opinion evidence. 20 C.F.R. § 404.1513(d). Opinions from QMHPs are given less weight than those from "acceptable medical sources" such as licensed physicians. 20 C.F.R. §§ 404.1513, .1527; <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012). "The ALJ may discount testimony from these 'other sources' if the ALJ gives germane reasons for doing so." <u>Molina</u>, 674 F.3d at 1111 (internal quotation marks omitted).

Knapp opined that Plaintiff was moderately limited in her abilities to: "maintain attention and concentration for extended periods; interact appropriately with the general public; and get along with coworkers or peers without distracting them or exhibiting extreme behaviors." Tr. 383. She also opined that Plaintiff's daily activities were moderately limited by her impairments. Tr. 384. Knapp stated that "[d]ue to depressed mood, fatigue, and frequent crying, I anticipate Ms. Johnson would miss more than 2 work days per month." <u>Id.</u>

The ALJ gave Knapp's opinion "limited weight" and rejected her characterization of Plaintiff's impairments as "moderate." Tr. 32. The ALJ provided several germane reasons for giving Knapp's opinion limited weight. Knapp was not an "acceptable medical source" and had only seen Plaintiff for six months. Id.; 20 C.F.R. § 404.1527(c)(2)(i) (stating that length and frequency of treatment is an appropriate consideration for determining the weight of opinions). Knapp's assessment of Plaintiff's limitations as moderate was rejected by the ALJ as unsupported by the objective medical evidence and the Plaintiff's own statements. Tr. 32. To support this finding, the ALJ cited to Disability Determination Service's Disability Determination Explanation written by reviewing physician Dr. Neal Berner. Tr. 67–75. Dr. Berner wrote that Plaintiff had no severe impairments and was only mildly limited in her concentration and social functioning. Tr. 71–75. It was germane for the ALJ to give greater weight to Dr. Berner as an "acceptable medical source" than to Knapp as an "other source." 20 C.F.R. §§ 404.1513, .1527; Molina, 674 F.3d at 1111.The ALJ also refered back to the RFC assessment—which relied on Dr. Wilson's opinion that Plaintiff improved over time—to conclude that she has severe impairments that cause limitations, but not to the degree that Knapp claims. Tr. 31–33. Where Knapp's testimony conflicted with Dr. Wilson's, it was germane for the ALJ to give more weight to the treating physician. See Molina, 674 F.3d at 111–12. Because the ALJ provided germane reasons for rejecting Knapp's opinion, he did not err in weighing the evidence.

## IV.    Remand

Plaintiff claims that the record demonstrates that she is disabled and if the improperly rejected evidence is credited as true, then the court should remand for an award of benefits. Pl. Br. 14. Alternatively, Plaintiff requests that the court remand to the ALJ to fully consider the

evidence and correct any errors. Id. Generally, the proper course is to remand for further proceedings in most cases. Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004); see also Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (quoting INS v. Ventura, 537 U.S. 12, 16 (2002)). The Ninth Circuit has "repeatedly held that a remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits." Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). The Ninth Circuit follows the credit-as-true doctrine to determine whether to remand for an immediate award of benefits where: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

In this case, further proceedings are necessary to fully develop the record. As discussed above, the record is incomplete as to whether Plaintiff's foot condition constitutes a severe impairment. This determination may have an impact on Plaintiff's RFC which in turn may change the outcome of the ALJ's disability determination. The Court also remands this case to the ALJ to make adequate findings regarding Plaintiff's subjective testimony. Before the court can consider whether to credit Plaintiff's testimony as a matter of law, it must first assess whether there are outstanding issues in this case. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014). There are outstanding issues as to Plaintiff's foot condition and as to Plaintiff's subjective testimony which may conflict with medical evidence in the record.

//

15 – OPINION & ORDER

**CONCLUSION**

For the foregoing reasons, the Court reverses the Commissioner's decision and remands

the case for further proceedings consistent with this opinion.

DATED this _____ day of _____, 2016.

_____
MARCO A. HERNÁNDEZ
United States District Judge

16 – OPINION & ORDER